**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**MICHAEL E. ROWAN,**

      **Plaintiff,**

**vs.**                           **Case No. 4:14cv572-WS/CAS**

**ALEX TAYLOR,
and JULIE JONES,**

      **Defendants.**

_____/


## REPORT AND RECOMMENDATION

Plaintiff, a "life sentenced" inmate proceeding pro se, filed a second amended complaint [hereinafter "complaint"] challenging the manner in which Matzah is searched when entering a prison facility from an approved sponsor or vender.  ECF No. 16.  Plaintiff brought claims under RLUIPA and the First Amendment pursuant to 42 U.S.C. § 1983, seeking declaratory and injunctive relief, as well as costs.  *Id.*

Defendants filed a motion to dismiss the complaint as moot.  Doc. 27. Defendants assert that because Plaintiff has been transferred from Taylor Correctional Institution and he acknowledges within the complaint that the

complained of searches are not continuing at his current institution, his claims are moot.  Doc. 27.  Defendants contend Plaintiff lacks standing to bring these claims and request this case be dismissed.  *Id.*

Plaintiff was provided an opportunity to file opposition to the motion to dismiss.  ECF No. 28.  His response was filed on October 13, 2015, requesting Defendants' motion to dismiss be denied.  ECF No. 29.

**Allegations of the Complaint, ECF No. 16**

Plaintiff was incarcerated at Suwannee Correctional Institution when he filed the second amended complaint.  ECF No. 16 at 10.  He alleged that all events about which he complains occurred at Taylor Correctional Institution between January 2007 and November 24, 2014.  *Id.*  Plaintiff's religious faith is Messianic Judaism, which incorporates a practice known as Kiddush.  Kiddush involves "partaking of bread/Matzah and wine/grape juice while reciting various blessings . . . and the 'sanctification' of the day/religious observance."  *Id.* at 12.  The Matzah and grape juice must be kosher.  *Id.*

Plaintiff said that at his "former facility," donations of grape juice and matzah were provided through an approved outside sponsor.  *Id.* at 12-13.  The donations were generally provided on a quarterly basis, usually mailed by the United States Postal Service "or otherwise delivered by the sponsor

. . . to Taylor Co. Inst. Main Unit/Annex." *Id.* at 13. Because items of contraband (such as drugs and cellular phones) were seized from a shipment delivered between September 2013 and April 2014, all incoming items began to be more thoroughly searched. *Id.* at 14. The searches included opening the sealed plastic packaging of Matzah. *Id.* at 15. Plaintiff contends the searches were "unnecessary, unsanitary, and rendered an otherwise 'Kosher' product 'un-Kosher.'" *Id.* at 16. Plaintiff alleged that he sought resolution of this issue with the Department, seeking to have new procedures implemented that would preserve the Kosher items for use. After those efforts were unsuccessful, Plaintiff instituted this action, claiming the Department's policies substantially burden the free exercise of his religious beliefs. *Id.* at 20.

On November 24, 2014, Plaintiff was transferred from Taylor C.I. to another institution. *Id.* at 21. Plaintiff notes that the procedures used in conducting security searches of the boxes of Matzah are Taylor "are not being carried out in the same manner" at the new institution. *Id.* at 22. Thus, Plaintiff alleged that he had been able to freely practice his religious beliefs "since being at Suwannee C.I. Annex, unhindered or un restricted." *Id.* Plaintiff contends, however, that this lawsuit is still appropriate because the security interests are the same at all institutions and the chaplains at

Suwannee may be unaware of Taylor's policies and a result of

inconsistencies.  *Id.* at 24.  He contends that because there does not

appear to be any written policy to be uniformly applied, Defendants cannot

contend "there is no reasonable expectation that the alleged violation will

not reoccur at" Suwannee, "or any facility Plaintiff might later be housed at

in the future . . . ."  *Id.* at 25.  Plaintiff further claims that he has been led to

believe that the challenged practices employed at Taylor C.I. were "newly

established" and would be "followed uniformly throughout the Department's

various facilities . . . ."  *Id.* at 23.  Plaintiff alleges that the issue is "capable

of repetition, yet evading judicial review" and it is reasonably likely to recur

because the security interests continue to exist.  *Id.* at 26.

**Analysis**

"Article III of the Constitution limits the jurisdiction of the federal

courts to the consideration of 'Cases' and 'Controversies.'" Mingkid v. U.S.

Att'y Gen., 468 F.3d 763, 768 (11th Cir. 2006) (citation omitted) (quoted in

Smith v. Allen, 502 F.3d 1255, 1266 (11th Cir. 2007) (abrogated on other

grounds by Sossamon v. Texas, 131 S.Ct. 1651 (2011)).  "The doctrine of

mootness derives directly from the case-or-controversy limitation because

'an action that is moot cannot be characterized as an active case or

controversy.'"  Al Najjar v. Ashcroft, 273 F.3d 1330, 1335 (11th Cir. 2001)

(quoted in Mingkid, 468 F.3d at 768).

"The general rule in our circuit is that a transfer or a release of a

prisoner from prison will moot that prisoner's claims for injunctive and

declaratory relief."  Smith, 502 F.3d at 1267; see also Zatler v. Wainwright,

802 F.2d 397, 399 (11th Cir. 1986) (concluding that inmate's release from

prison mooted claim for declaratory and injunctive relief); McKinnon v.

Talladega Cnty., 745 F.2d 1360, 1365 (11th Cir.1984) (inmates transfer to

a different jail moots claim for declaratory and injunctive relief but not a

claim for monetary damages).  "The reason for this rule is that injunctive

relief is 'a prospective remedy, intended to prevent future injuries,' . . . and,

as a result, once the prisoner has been released, the court lacks the ability

to grant injunctive relief and correct the conditions of which the prisoner

complained."  Smith, 502 F.3d at 1267 (internal citation omitted, otherwise

citing to Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (per curiam)

(stating that a prisoner's past exposure to sub-par conditions in a prison

"does not constitute a present case or controversy involving injunctive

relief")).  That rule remains the law in this Circuit and controls this case.

See Dunn v. Adams, — F. App'x —, No. 14-14590, 2016 WL 737746, at *2,

n.2 (11th Cir. Feb. 25, 2016) (noting that because the prisoner was "no

longer housed in either Ware State Prison or Calhoun State Prison, his claims for injunctive relief against the prison officials there are moot."); <u>San Antonio v. Henry</u>, 618 F. App'x 554, 557 (11th Cir. 2015) (noting that because the only possible relief for a RLUIPA violation was declaratory and injunctive relief, the prisoner's RLUIPA claim might be moot and remanding to district court to make that determination in the first instance).

Here, the only relief sought by Plaintiff is declaratory and injunctive relief.  It is undisputed that Plaintiff is no longer incarcerated at Taylor Correctional Institution[1] where the allegedly improper searches of the religious items took place.  *See* ECF No. 29 at 2.  It is also undisputed that "the conditions he complains of are not ongoing at his present facility . . . ." *Id.*  Plaintiff disputes, however, that this case is moot.  ECF No. 29 at 4.  He argues that "Defendants have failed to say with assurance that there is no reasonable expectation . . . 'that the alleged violation will [not] reoccur." *Id.* Plaintiff points out that he arrived at Taylor C.I. in 2007, but the complained of conduct did not occur until 2014, after the discovery of contraband.  *Id.* at 5.  He argues that "all it would take for the policy/practice to change at Plaintiff's current institution is for an attempt to introduce contraband to be

---

[1] Plaintiff was transferred from Taylor Correctional Institution to Suwannee Correctional Institution in late November 2014.  ECF No. 5.

discovered and/or successfully take place" or for staff to transfer to

Suwannee who had experienced a similar security breach and seek a

policy change.  *Id.* at 6.  Plaintiff also notes that he "is a life sentenced

inmate and could and/or will be transfered [sic] to any institution at any

given time for any given purpose in the future, including going back to

Taylor C.I."  *Id.*  Plaintiff argues that "is not a question of 'if' but 'when,'

especially considering that he has requested a good adjustment transfer

which is still valid and pending.  *Id.* at 6-7.

> To seek injunctive relief, a plaintiff must show that he is under
> threat of suffering "injury in fact" that is concrete and
> particularized; the threat must be actual and imminent, not
> conjectural or hypothetical; it must be fairly traceable to the
> challenged action of the defendant; and it must be likely that a
> favorable judicial decision will prevent or redress the injury.
> *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC),
> Inc.*, 528 U.S. 167, 180–181, 120 S.Ct. 693, 145 L.Ed.2d 610
> (2000).

Summers v. Earth Island Inst., 555 U.S. 488, 493, 129 S. Ct. 1142, 1149,

173 L. Ed. 2d 1 (2009).  "[A] federal court has no authority to give opinions

upon moot questions or abstract propositions, or to declare principles or

rules of law which cannot affect the matter in issue in the case before it."

Church of Scientology of Cal. v. United States, 506 U.S. 9, 12, 113 S.Ct.

447, 449, 121 L.Ed.2d 313 (1992) (quotation marks omitted) (quoted in

Rich v. Sec'y, Florida Dep't of Corr., 716 F.3d 525, 531 (11th Cir. 2013)).

This is not a case in which Plaintiff has been subjected to a uniform policy of the Department of Corrections, applicable statewide.  The events about which Plaintiff complains in this case were isolated, occurring only at Taylor C.I.  Plaintiff has not been at Taylor for approximately 18 months at this point, and there is no indication that the challenged searches have occurred at Suwannee C.I. during this time.  Plaintiff's arguments as to why this case is not moot are too speculative.  Policies could change, Plaintiff could be transferred, and prison staff could be moved, but those events, in and of themselves, do not mean that Plaintiff will necessarily be unable to freely exercise his religious beliefs.  Plaintiff has not demonstrated that his injury is either real or immediate, but "merely conjectural."  *See* Smith v. Sec'y, Dep't of Corr., 602 F. App'x 466, 469 (11th Cir. 2015) (stating "[a]n injury is imminent if it is likely to occur, and likely to do so immediately.") (quotations and citations omitted). "Immediacy requires that the anticipated injury occur within some fixed period of time in the future."  Smith, 602 F. App'x at 469 (citing Florida State Conference of N.A.A.C.P. v. Browning, 522 F.3d 1153, 1161 (11th Cir. 2008)).

Moreover, this is not a case in which prison officials have allegedly voluntarily ceased a challenged practice or statewide policy.  Instead, it appears to be a random or discretionary act at one prison, and there is no

indication that Plaintiff *currently* faces injury from the challenged search.

"The party invoking federal jurisdiction bears the burden of establishing" injury in fact, causation, and redressability.  Smith, 602 F. App'x at 469 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).  Plaintiff has not demonstrated the "injury-in-fact requirement of standing" because he has not shown an imminent, real, or immediate risk that the conduct is likely to occur.  Smith, 602 F. App'x at 469.  Because Plaintiff's "alleged future harm is indeterminate," *id.*, Defendant's motion to dismiss, ECF No. 27, should be granted.

**Recommendation**

It is respectfully **RECOMMENDED** that Defendants' motion to dismiss this case as moot, ECF No. 27, be **GRANTED**, and Plaintiff's amended complaint, ECF No. 16, be **DISMISSED**.

**IN CHAMBERS** at Tallahassee, Florida, on June 6, 2016.


 s/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**
**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**